Case No. 13-4353, United States of America v. Thomas Parenteau et al. Oral argument not to exceed 15 minutes per side. Mr. Michael Dortch for the appellant. Good morning, your honors. May it please the court, Mike Dortch on behalf of the appellant MKP Investment LLC. In appealing to this court, I asked the court to answer one question. In defending against appeal, the United States has asked the court to answer a different question. They're both fairly simple questions, I think. And I think before I address either, I should ask this court if the question you would like to have answered is, what is the significance of the ruling I'm asking you to make? And I think the answer to that depends somewhat on whether or not you're practically minded or philosophically minded. If you are The outcome of this case is important to the creditors of every solely owned corporate entity whose assets might someday be subject to forfeiture due to the crimes of that entity's shareholders. If the United States can seize an entity's assets due to crimes committed by the shareholders, the United States is free to essentially create a super priority, step in front of those creditors and decide for itself, at its discretion, how much or whether to make any of those assets available to the creditors. Why wouldn't that be true just with respect to one defendant who commits a crime and has a lot of property and uses that property in the crime who has creditors? That's absolutely true, Your Honor, for that one creditor. When the United States seizes that entity's The other creditors lose out, right? Unless they meet other requirements. Unless they meet other requirements, yes, Your Honor. Those creditors You're saying, oh, this is dangerous to the creditors of the company, but if the company is the same as the principal, then creditors are going to lose out just as much as if there wasn't a company that was the alternative and the creditors were creditors of the principal. I'm not seeing what the difference is. Okay, the biggest difference is, and I agree with you, that if you're dealing with the individual, if you're the bank loaning the individual You could owe money to people, right? Sure. But if this property was used in the crime, the property can be taken. Well, it doesn't really For purposes of the forfeiture laws, as they are written, the property does have to have a nexus to the crime or the criminal forfeiture law, as I understand it, yes, sir. But whether or not the property is used in the crime isn't really an issue for purposes of criminal forfeiture law, as I understand it. But those issues It's challenging whether this property is sufficiently connected to the crime. Absolutely not, your honor. You're saying if someone who has committed the crime with a sufficient connection to the property that the property can be forfeited, if there are debts to the, if there are creditors of a corporation, they deserve some sort of interpretation on our part to protect them. Correct, your honor. So I'm not saying why that should be as a policy. Because the law Big policy thing, but that's the way forfeiture works, isn't it? If you have creditors of a person who has property that's forfeitable. That is exactly right, your honor, as I understand it. Okay. But even so, your honor, the difference, I submit the difference is, the difference is that you have a creditor or a third party, you're dealing with a corporate entity. It's a juristic existence, a body recognized by, created by, defined by the laws of the various states that We're talking about forfeiture law for property that was used, as it were, sufficiently used for a crime by the person who wholly owned this company and is indistinguishable from the company. Well, your honor, I exist. Well, I mean, there are some distinctions you can make, but it's substantially. Yeah, there's no, there's no question that if the Sixth Circuit federal view of alter ego as a concept distinct from piercing the corporate veil is applied, I lose, my client loses. But I submit that the Ohio does not recognize that point of view. The alter ego doctrine that is developed under the federal law is broader than that which Ohio has adopted. But isn't it true that when you come over here and play in our ballpark, we, when I say we, they make the rules? Your honor, it is absolutely. Congress makes the rules. Congress does make the rules. And the rules in this case, Congress has not mandated or even suggested that the courts should adopt a federal common law for corporations. No, I didn't mean to suggest that. I'm just saying that they allow forfeiture of property use. Yes, sir. There's no question. That's right. Yes. And the difference as Judge Rogers was trying to point out, as I understood it, if one of these people went out and committed a crime, the property that they used in doing it could be forfeited in the United States. And suppose they were used a car that they had mortgaged, and they used this car to rob a bank, and the government, as they could, would try to forfeit that car. Perhaps they would, your honor. But there's two different issues there. One, there's the forfeiture of the car. And the government certainly has the ability to forfeit the car under the civil forfeiture laws because the car is presumed guilty of the crime. And so under civil forfeiture law, they proceed directly against the car. If they're proceeding on the car, I'm submitting that you've got to get the right owner of the car. But you can take my car, but you can't take my brother's car. You can take my car, but not another car. If I bought my car using proceeds of the bank that I robbed, then even though it's in my brother's name, it's still... Which is not what happened here, your honor. Here, the title, ownership of the car, the policies, existed in MKP prior to Mr. Parenteau's criminal acts or the acts that he was convicted of. Could I ask a question that's closer to the facts of the case? I mean, I'm the most guilty of many people on this court of asking hypotheticals, but here I want to get a little bit closer to what actually happened there. The question is whether MKP is a person other than the defendant, right? If it's not a person other than the defendant, you lose. Exactly. Other than the defendant are federal words in a federal statute. Yes, sir. Right. So it's not... If we interpret those words in a certain way, we're not creating federal common law. We're just interpreting a statute. The question... Common law is when the court says, go and make a rule, and then we make a rule because we're the court and we're required by Congress to make a rule. But this is interpreting language. It says persons other than the defendant. You can say, well, what they meant was persons other than the defendant as defined by state law, then we would have to go into state law. So we can read those words into it, and maybe they should. Why should we, though? Your honor... It just seems like persons other... Now, there are some other cases, I understand, that deal with language referring to property, where the interpretation was, well, property is such a state law context that we have to use state law to figure out what the federal words property mean, because property is a legal construct. But other than the defendant, I don't see why we have to go to state law to figure out simple words like person other than the defendant. Can you address that issue? Because it seems to me a make-or-break issue for you. I think it is, your honor. And the question, I think, becomes, it's almost a circular question. You have to decide where do the rule of law that we're going to apply to... Normally, we look at the words and see what the statute was trying to accomplish and look at the plain meaning of the words. And, you know, if we're people who speak English and look at English words from Congress and come up with what they mean, I mean... But your honor, okay, let's do exactly that in this case. If we look at this statute in its entirety, try to interpret it as a whole as numerous authorities say we attempt to do. If it's the same person for purposes of forfeiture policy, you want to say it that way, then they can't bring this petition. I agree. But the question becomes, again, what did Congress... Let me answer the question, if I may. What did Congress intend in adopting these words? Well, one of the things that I think... Exemptively, it doesn't mean somebody who's wholly owned and for whom the distinctions of corporation law have been very carefully maintained. You know, I mean, it's like, why would you say that was a person other than the defendant for forfeiture purposes? It would seem like all the policies for forfeiting the defendant's property would apply just as well to this wholly owned subsidiary that did things at his behest all the time. Because it is a corporate body. The only policy you could give me, I thought, for saying it should be treated differently is the creditors. And I don't see how the creditors are different from if this person was... If this M.K.P. was... If this person is wholly owned, how the creditors of M.K.P. stand in any different position than if they were creditors of the defendant? Your perfect example in this case is that the creditors of M.K.P. are different than the creditors of Thomas Parenteau. The creditors of M.K.P. include, for example, Chase Manhattan Bank, which has a $1 million judgment. There are trade creditors of M.K.P. that will never reach Thomas Parenteau's assets. Mr. Parenteau has creditors... Mr. Parenteau has a $24 million judgment against him that M.K.P. does not have against him. They may be different creditors, but the debtor seems to be indistinguishable for forfeiture purposes. What's the forfeiture policy for treating them as distinct? Your Honor, the forfeiture policy... It's clear to me, Your Honor, as I read the statute, that Congress never considered... I'm asking the policy, and you say, well, they didn't mean it. Well, no, no, no, I'm sorry, sir. No, I mean, I understand. It is a little circular. If you say Congress meant X, and the other side says Congress meant Y, and you say, no, here's the reason it meant X. It meant X because it's X and not Y. And they say, no, it means Y. I mean, you can go around in a or you can look at what the underlying purposes of the policy are. Some people say you shouldn't do that. Some people say you should. I'm asking, if you want to look at the policy, how does the policy make any difference? And I'm submitting that Congress did not... Congress has... You're right. There's a policy for purposes of forfeiture law that the fruits of a crime should not be enjoyed by the criminal defendant. But here, the criminal defendant... Here, that would be exactly what was happening. And the only possible reason you might want it to be different is these creditors. But I'm not seeing how that makes a difference. I just don't see it. Your Honor, and what I'm hearing then is that you find the federal alter ego... I'm asking you to explain why that's wrong. All I'm doing is asking questions. I understand. And Your Honor, I see my time is... I'd like to ask some questions. Please. Yeah, sure. I mean, I just don't want him to sit down. Who are MKP's creditors and what did MKP do? MKP was a entity, one of many entities owned by Mr. Parenteau, that was engaged in the luxury home construction business. So thus, it had... During its active years, it owned property. It certainly obviously borrowed money. It... Well, did it do the actual building? Your Honor, I don't know the answer to that. I believe that there were... I believe that MKP did do some construction, but I don't know enough about Mr. Parenteau's affairs in that respect to know whether it... So this is all hypothetical. I appreciate your discussion of these issues. And in fact, I do think there's a difference between a criminal defendant and a wholly owned corporation of a criminal defendant. But I think a lot of that is case by case, and it depends upon what that wholly owned corporation does. And I'm not... So you don't seem to be able to address that. I mean, I know it was in the building business, or at least it bought and sold these luxury homes, but it's unclear to me whether it actually built them, whether it had... Whether there were people who supplied lumber and whether there were people who worked on it and all the rest of it, and whether that's the nature of the creditors or whether we're talking about that the creditors are the banks that loaned the corporation money on the houses. Are you able to address that? I am not, Your Honor. I simply do not know the full nature of MKP's business. Okay. And in terms of Ohio law, what do you make of... I think it's called Danziger. What do you make of that case? Danziger is certainly the most difficult case for me to explain under Ohio law. In Danziger, the court, of course, terribly, bitterly divided court, concluded that we would ignore a corporate entity that held the shares of a second corporate entity in order to permit the shareholders to examine the books of the second entity. But Danziger, I think, as I suggested in my brief, has to be read... It's sui generis. There's no... There is no reason not to permit, under the policy reasons for corporate entities, under the policies that justify the creation of corporations. There simply was no reason not to give those shareholders the right to examine the books of the second entity. There's nothing to be gained, nothing to be lost, and no actual cogent reason why that shouldn't be permitted. In this case, however, what the government is asking through this approach it has, it's asking this court and the lower court to ignore not MKP's existence, not the juristic existence of a fictional entity. It's asking you to ignore the existence of Mr. Parenteau, to reach through a blood and flesh human being, in fact, the individual that it and convicted in order to get to the assets being held by another entity, a corporate entity formed under Ohio law. And the question, Judge Rogers... How do you characterize it as look through? I mean, that's a pretty esoteric way of characterizing it. It's his company. It is his company. Entirely. It is his company. Well, they could have forfeited his interest in that. Correct. And that is actually what I'm suggesting that must be done. We have these forfeiture laws and they are complex and confusing and they are somewhat controversial. Well, if we're going to have them, then at least let's use them as they were written. And in this case, Mr. Parenteau has... It's been my point, Mr. Parenteau has assets. He has his interest in the entity. And that interest is available to the government through 853P. And if the government takes the interest through 853P, then the creditors of MKP possess exactly whatever rights they had. So they would be getting rights that they wouldn't have if he owned this directly. True. But he doesn't... That's why you care about this case, presumably. Yes. Okay. Do you have further questions? Thank you, Counsel. Thank you, Your Honors. And thank you for the additional time. Good morning, Your Honors. Mary Beth Young on behalf of the United States. I'd like to begin with a general point that I think is clear. And that is that while a criminal forfeiture proceeding is in persona, not every so-called third party is entitled to a certain ancillary claim. Whether you look at state or federal law, it's agreed among federal courts to address these federal forfeiture issues that when a criminal defendant effectively controlled the property that's been forfeited, despite nominal ownership being with someone else, forfeiture is still possible. I'm having a problem with this. There are many, many wholly owned corporations. I mean, and they're perfectly legitimate. And they are wholly owned and run by the sole owner. And they engage in business as an entity. And yes, it's true. The individual does everything, controls everything. But there's no question that the law honors the separate corporate existence of these wholly owned corporations. And the law wants that to be a separate entity. I mean, it promotes the business. And it's very troubling to think that just because an entity is a wholly owned corporation of a defendant that the government can swoop in and take the assets of that corporation and leave the rest of the world just with their mouths open. And that cannot be the law. Thank you, Your Honor. The United States does not assert that that is the law. So what is it that makes this possible? I mean, I totally understand the idea of having a separate, of forfeiting the defendant's interest in that wholly owned corporation if it has the requisite value. But I don't understand how you just erase the corporate existence. Right. In order to view an entity as not other than the defendant, far more than simply being a wholly owned corporation is needed. The inquiry is similar, the United States would suggest, to the federal alter ego standard that has been applied in other contexts and that is discussed in our brief. You still look at considerations similar to what the district court looked at here. Although it was discussing Ohio alter ego law, the considerations it looked at as far as considered. And if you look at the facts of this case, keep in mind there's no challenge to the factual determinations about this corporate entity not being distinct from this defendant. Well, were there creditors? I'm sure there are creditors of MKP. There's at least one judgment creditor that's a bank. However, to the extent that MKP has a problem with the United States sort of getting ahead of unsecured creditors, that's a problem with the concept of forfeiture more than it's a problem with which state, which law applies to the alter ego question. To suggest that the United States is relegated to the substitute asset of Apparento's interest in the corporation, which is what MKP suggests here. That is, first, it's meant as a substitute when the tainted asset is unavailable. Not to use because the tainted asset has been put in someone else's name strategically. Second, it's not an adequate substitute because, well, for one, in many situations, there may not be other assets that are of comparable value. And in fact, here, we submit that's likely going to be the case for the very reason that the United States is put behind intervening creditors. The forfeiture of a tainted asset relates back to the time of the commission of the offense. So the United States took these forfeited life insurance policies at the beginning of Tom Apparento's conspiracy. 2004, I think, was the first charge conduct. If we were relegated to a substitute asset theory, we would take as of the date of the substitute assets under this court's precedent. That's just systematically not an adequate substitute. I'm not following. Give me an example. Well, because you're taking as of now and all intervening creditors during that time period that now have claims against MKP would stand ahead of the United States by virtue of time. I would point out- Instead, the United States is supposed to get the priority as of the time of the crime. Yes. The relation back is lost via a substitute asset theory. Is another way of saying your answer or maybe a different answer to Judge White's concern about the breadth of ignoring legitimate corporate forms that it doesn't- what you're arguing doesn't mean that if you have a criminal with property, you can take all the property of his wholly owned subsidiaries or owned companies. But not only do you have to find these factors that you're suggesting apply, you know, like it's, I don't know, used for various purposes. The actual property that they take has to be property that is sufficiently connected with the crime. Right. So you're talking about a creditor who's lending to a company that has property that's being used or sufficiently connected under the forfeiture statute to the whole owner of the company only. Exactly. It's involved in, this is under money laundering forfeiture, the standard is a property that's involved in the money laundering. And the district court here found, in fact, that these policies were integrally involved in the offenses charged in count two because they were used to commit, facilitate, and disguise or conceal the crime. Unless I'm missing something, this whole discussion of federal law and Ohio law, did that take place below? It was not developed below, and I would attribute that primarily to the fact that we did simultaneous briefing. If you look back, when MKP filed its ancillary petition, the United States responded with a motion to amend the preliminary order, and it is citing federal law only. We have the hearing, which was very abbreviated, didn't really discuss legal points about this. And then we had a simultaneous briefing schedule that post-hearing briefs were sort of two ships passing in the night. And we sort of didn't join the issue. And of course, the United States won under the district court's reading of Ohio law. This was honestly, to be frank, a case where my first instinct of first thing in your brief is to defend the district court's reasoning got flipped to second because, really, the United States does think it is imperative that this is viewed as a question of federal law. But did you even argue that below? Well, we cited federal cases only. If you look at our motion to amend the preliminary order of on federal law. And I don't think this court... Was it argued or did you just get a decision on the briefs? We had a hearing. We had an evidentiary hearing. Right. But did you argue the application? There was not an argument at that hearing about which law applied. It was the post-hearing brief of MKP was the first place that really articulated the issues that are being briefed here. And the United States brief was filed simultaneously and didn't have the opportunity to get into that. I would submit, however, that this court should apply the correct law. I don't think... We don't need to choose, though, if they both lead to the same conclusion. To be sure. And under the Denziger case that was mentioned, we think one thing that illustrates is that even the Ohio courts understand that context matters. There's a lot of talk about the Ohio courts don't reverse peers. They don't reverse peers in situations involving, you know, contract claims, tort claims, and the question of are we going to impose this liability on a for shareholder liabilities. But when they have a different context, such as this question about access to records in Denziger, they come to a different conclusion about when you treat entities as the same. And that's effectively what we're asking the court to do here. I'd point the court to the D.C. Circuit's decision in BCCI and the Second Circuit's decision in Peters, which are situations where the courts were faced with questions about state law versus federal law in looking at other issues under the federal forfeiture statutes. And both those courts said, this is a federal statute. We're not looking at state law. We're going to treat this as a matter of statutory interpretation. And we think that's the most appropriate treatment here. And the way you view it is the question is whether the, I mean, and the statute does say person, but whether the person who's making claim to the particular asset is separate, would you add with respect to that asset? That for traditionally, when you're talking about an alter ego, which you need not be, you're interpreting statutory language that says other than the defendant. That doesn't naturally seem to me to lend itself to a item specific inquiry. Now, you're talking about a nominee, it is item specific. In other words, if the girlfriend owned the drug dealer's car, it was effectively the drug dealer's car, but he put it in her name. Under nominee theory, you do, you're limited to looking at, did the defendant have an interest in that car despite the fact that title was with someone else? So it is more item specific. In interpreting other than the defendant, I think you're looking at, is the corporation so dominated and controlled by the defendant that they cease to effectively be separate entities? Now, where the specific item comes in is that we have to have nexus to the item for it to have been forfeitable at all. I mean, to be even in this position of someone filing an ancillary petition, the item has already been found to be forfeitable by virtue of its nexus to the crime. And why didn't you indict MKP? To be frank, we didn't consider MKP to be separate or to have any culpability separate from TOMS. If you want to talk about practical consequences of the suggested approach of MKP, having the United States make indictment decisions to indict additional defendants to be sure that it can forfeit things, although as a matter of culpability, the corporate entity is indistinguishable from the individual, is not a good use of resources, nor would it be a good use of resources to routinely have to do parallel civil forfeiture proceedings. Further questions? No, thank you. Thank you. Thank you, Your Honors. Your Honor, I, again, with my civil background being pulled into a criminal forfeiture case, the most disturbing thing I've heard was the very end of that colloquy. The practical consequences, let's remove this from the real world. Let's talk about the practical consequences just of the procedure in this case. When is it convenient to determine that you're going to indict a corporate entity? Or when is it, you know, they're making those decisions. The counsel was asking why there wasn't, as a practical matter, why there wasn't an indictment. She's allowed to explain why. Of course, Your Honor. And I meant no disrespect to her. I understand. I'm concerned for the court. It's not like the argument is that if it made a difference. But it does make a difference, Your Honor. I understand. It makes a difference just procedurally. Procedurally here, the way the statute is structured. It makes a difference if you're right on the underlying statute. It doesn't make a difference if it doesn't. I think it makes a difference whether I'm right or wrong. And procedurally, let me explain what happened. Well, if they're able to get the assets without indicting, why should they indict if they can get the assets without indicting? If they have to indict in order to get the assets, then they should have indicted. But, I mean, to say why didn't they do it, they didn't do it because they thought they didn't need to do it. Your Honor. The issue here is whether they needed to do it or not. The way the statute is written, NKP is precluded from participating in the criminal trial. Okay? And there is no way during that trial that NKP can be heard, that it can introduce evidence, it can do anything. It's precluded, which is fine. But in this case, they tried Tom Parenteau for eight weeks. Then there was a two-day forfeiture hearing. And at no point in time, ever, during that proceeding, did the words alter ego or piercing the corporate veil come out of the prosecutor's mouth. They could have given evidence that showed that they were other than the defendant. Your Honor, the truth of the matter is, I can't answer that because, again, as NKP's counsel, I wasn't there. Now, I will assume... I'm not criticizing you or them. I'm just saying they had a hearing on the issue of whether they were other than the defendant. If they weren't other than the defendant, then they couldn't succeed in the ancillary proceeding. That hearing... It's nothing that said... If they weren't able to give sufficient evidence, that's what we're here talking about, is whether there was enough evidence that they were other than the defendant, or whether it was legally enough, I suppose. But to say that that's not giving them due process, they should have been indicted, that's not consistent with how the statute's structured. The statute just says you have to be other than the defendant. It doesn't say other than the defendant to be determined by a jury in a criminal case. No, Your Honor, it does not. But other than the defendant does have to be determined by a set of rules. That's what we're talking about. A set of rules. And the question is, as... I'm just suggesting that maybe we're getting a little off track if we get into whether there was an indictment. I understand. Well, Your Honor, it's been an honor and... We appreciate your advocacy. And thank you, sir. Thank you. Other questions? Anything. Questions, Judge White? Thank you, Your Honor. Thank you. Case will be submitted.